### LIFE ASS'N OF AMERICA v. EDWARDS.

(Circuit Court of Appeals, Second Circuit. February 11, 1908.)

#### No. 120.

INSURANCE—LIFE—BREACH OF WARRANTY.

In an action on a life policy issued in 1902, insured having died in 1903 of carcinoma of the lung, and stipulating that it was issued in consideration of the statements, etc., contained in the application, warranted by insured to be true, and made a part of the contract, it was improper to refuse to direct a verdict for insurer, where the application recited that insured had last consulted a physician in 1892, and for typhoid fever, and it appeared that he had consulted another physician infrequently from 1900 to 1903, and another several times, as to whether insured had tuberculosis, that a physician was prescribing for him in 1901, and that two months before applying for insurance a physician examined his lungs and chest, though his widow testified that he did not, to her knowledge, consult a physician between 1892 and 1902, and acquaintances testified that he appeared to them to be in good health during that period.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 691.]

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a judgment entered upon the verdict of a jury in favor of defendant in error, who was plaintiff below. The action was upon a policy of life insurance issued to one Charles William Edwards, who died July 2, 1903, of carcinoma of the lung.

Van Schaick & Norton (W. B. Brice, of counsel), for plaintiff in error.

William D. Sawyer (Thomas F. Bayard, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The policy was issued September 15, 1902, upon an application of the same date. The policy contains the usual clause that the contract is "issued in consideration of the statements, waivers, and agreements contained in the application for this policy and the declarations to the medical examiner, all of which the assured warrants to be true, and which are made part of this contract."

In response to a group of questions in the application relating to various diseases Edwards answered that he had never had spitting of blood or habitual cough. There was some testimony bearing upon the truthfulness of these answers, which need not now be discussed. The application also contained this question: "II. How long since you have consulted a physician? For what disease? Give name and residence of such physician." To this he answered in writing: "Typhoid, 1892; Dr. Draper, Wilmington, Del." Defendant contended that this answer was untruthful and constituted a breach of warranty.

Dr. Terhune, one of the physicians, who swore to the proofs of death, was called by defendant and testified that he was the family physician of the deceased, and that for about three years from 1900 to 1903 Edwards consulted him. "He consulted me professionally during that time; very infrequently, but he consulted me. He consulted me on September 8th in 1901 in my office." A friend of deceased testified that in April, 1902, she went with him to the office of Dr. Loomis to consult the latter as to whether he had tuberculosis; that he went several times; that he remarked to witness after Dr. Chamberlain made the examination that he had not tuberculosis at all. The same witness produced a letter of deceased, dated in October, 1901, which contained this paragraph:

"I stood on the corner of Samson street for a moment, when up came an old newspaper friend, with the result that we went in to get a cigar; that is, he did, as he don't drink and I don't smoke (since the doctor has been prescribing for me)."

Another letter from the deceased was also proved, and the envelope which inclosed it, postmarked July 21, 1902. It contains the following:

"At breakfast my furrowed face was a subject of comment, and I pleaded heat, hard work, and chest trouble, with the result that I had to go to the doctor's office for an examination. He stripped me, and thumped me, and did all sorts of stunts with instruments, declared my heart action O. K., my lungs and chest in good order, intimidated that I was losing sleep, and told me to keep better hours, and if I had any more expectorations marked with blood to come and see him then."

The wife of deceased testified that he did not, to her knowledge, consult a physician between 1892 and 1902; and two of his acquaintances testified that he appeared to them to be in good health during that period. But the evidence submitted by defendant as to his consulting a physician subsequent to 1892 was not contradicted. Upon the proof as it stood at the close of the case we think the court erred in denying the motion of defendant to direct a verdict in its favor on the ground that there was a breach of warranty.

Judgment reversed, and cause remanded for new trial.